1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-Filed 7/6/2010**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| WILLIAM CARTER, <br><br>                 Plaintiff, <br><br>       v. <br><br> DEPARTMENT OF CORRECTIONS – SANTA CLARA COUNTY, Chief Flores, and Sheriff Laurie Smith. <br><br>                 Defendants. | Case Number C 09-2413 <br><br> ORDER[1](1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND (2) GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND <br><br> [re doc. nos. 24, 29, and 32] |
| --- | --- |

Plaintiff moves for summary judgment with respect to all of his claims. Defendants move for judgment on the pleadings or, in the alternative, summary judgment with respect to the majority of Plaintiff's claims. The Court has considered the moving and responding papers, the declarations and exhibits, and the oral arguments of Plaintiff and Defendants' counsel presented at the hearing on May 14, 2010. For the reasons discussed below, Plaintiff's motion will be denied, and Defendants' motion for judgment on the pleadings will be granted, with leave to amend. Defendants' alternative motion for summary judgment will be denied as moot.

---

[1] This disposition is not designated for publication and may not be cited.

1

## I. BACKGROUND

2          On June 1, 2009, Plaintiff William Carter ("Plaintiff"), a former employee of the Santa

3    Clara County Department of Corrections (the "SCCDC"), filed the instant action, alleging that

4    the SCCDC, Chief Flores, and Sheriff Laurie Smith (collectively, "Defendants") (1) violated

5    California's Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12900 *et seq.*, (2)

6    are liable for the common law torts of negligence, intentional infliction of emotional distress, and

7    negligent infliction of emotional distress, (3) terminated him in violation of public policy, (4) are

8    personally liable for tortious actions pursuant to 42 U.S.C. § 1983, (5) violated the California

9    Public Safety Officers' Procedural Bill of Rights Act ("POBRA"), Gov. Code, § 3300 *et seq.*, (6)

10   violated Cal. Labor Code § 1102.5, and (7) breached the implied covenant of good faith and fair

11   dealing.[2]

12   **A.      Plaintiff's illnesses**

13          Plaintiff began working for the SCCDC in or about 1989.  (Plaintiff's Amended Motion

14   for Summary Judgment ("AMSJ"), Ex. 726.[3])  His employee evaluations sometimes expressed

15   disapproval of the amount of sick leave that he used.  (*See, e.g.*, Plaintiff's AMSJ, Exhs. 730

16   (evaluation from 1994-95, noting that "[h]owever, he has used 168 hours of sick leave during

17   this period"), 732 (evaluation from 1995-96, noting that Plaintiff was one day over the sick leave

18   limit), 733A (evaluation from 1997-98, noting that Plaintiff took too much sick leave in 1997,

19   but improved in 1998).)

20          In 1997, Plaintiff transferred to the SCCDC's main jail facility.  (Plaintiff's AMSJ, Ex.

21   122997.)  A study performed in 2000 indicated that the HVAC system of the administrative

22   booking area contained dust with a "significant portion of lead."  (*Id.*, Ex. 7700A.)  On an

23   unspecified date, an analysis of the surface of an air vent in the same area detected the presence

24

25   _____

26          [2]  Many of the relevant facts are not in dispute.  Disputed facts are noted as necessary.

27          [3]  Plaintiff, proceeding *pro se*, filed an amended motion for summary judgment without
     resubmitting the exhibits attached to the original motion.  The Court will address only his
28   amended motion but will refer to the exhibits attached to the original.

Case No. C 09-2413
ORDER (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ETC.
(JFEX1)

1    of lead at 345 μg/ft$^2$.[4]  (*Id.*, Ex. 1329 at 2.)  On September 16, 2002, Plaintiff complained of

2    irritation to his eyes, throat, and lungs from dust particles coming from a ceiling vent on the sixth

3    floor of the facility.  (*Id.*, Ex. 9172A.)  That same day, Plaintiff submitted a maintenance request

4    for the vent to be cleaned.  (*Id.*, Ex. 9172B.)  Not later than November 18, 2002, the vents were

5    cleaned and the air filters were replaced.  (*Id.*, Ex. 11182.)

6          The specifics are not clear, but it appears that Plaintiff took a series of disability leaves

7    between September 16, 2002 and August 21, 2005, all related to a breathing condition.  (*See Id.*,

8    Ex. 1428.)  On multiple occasions, Plaintiff's treating physicians approved his return to work, but

9    subject to some restriction to avoid the vents on the sixth floor.  (*Id.*)  The SCCDC would not

10   accept "restrictions that dictate a location".  (*Id.*)  Though Plaintiff apparently returned to work

11   intermittently during that period, he returned to work on a regular basis by August 21, 2005.  (*Id.*,

12   Ex. 2205.)

13         On January 6, 2006, Plaintiff discovered and reported black mold growing on the "M-3 C

14   dorm".  (Plaintiff's AMSJ, Ex. 10606.[5])  An inspection on January 10, 2006 revealed the

15   presence of some type of mold or fungal growth.  (*Id.*, Ex. 1242.)  On the same date, the dorm

16   was closed for repairs and the inmates were transferred to another location.  (*Id.*, Ex. 11006.[6])

17   **B.    Disciplinary actions against Plaintiff**

18          Plaintiff has been the subject of at least two disciplinary actions taken by the SCCDC.

19   By letter dated February 17, 2005, Plaintiff was suspended for eighty-four hours.  (Plaintiff's

20   AMSJ, Ex. 205.)  The suspension appears to have arisen from a 2003 altercation between

21

22         [4]  In other words, 0.000345 g/ft$^2$.

23
24         [5]  The authenticity of this document is questionable.  Each time the date appears, a portion
     of the date is covered by the handwritten numeral "6".  It is not clear when and by whom this
25   alternation was made.

26         [6]  The authenticity of this document, a purported letter from Edward Flores, Chief of
     Correction, to all affected staff, also is questionable.  The letter clearly indicates that the dorm
27   "will be" closed on January 10, 2006.  The letter is dated May 27, 2005, indicating that the dorm
     closure was scheduled well in advance of January 6, 2006.  The May 27, 2005 date is crossed out
28   by hand, and what appears to be "Jan 10, 2005" is handwritten underneath the date.

1   Plaintiff and Manteca police officers that resulted in Plaintiff's arrest. (*Id.*, Ex. 1204.) The

2   District Attorney declined to file charges. (*Id.*) Plaintiff disputed the suspension and submitted

3   the matter to arbitration. (*Id.*, Ex. 406.)

4       On February 2, 2006, Plaintiff was placed on leave with pay pending the results of an

5   investigation into Plaintiff's "acts of insubordination and conduct unbecoming an officer",

6   including: (1) acting disrespectful to his supervisors on December 20, 2005, (2) disrespectfully

7   refusing to remove "an unauthorized head cover (beanie)" on December 26, 2005, and (3)

8   harassing and insulting his supervisors on January 29, 2006. (Sepulveda Decl. in Support of

9   Def.'s Mot. ("Sepulveda Decl."), Ex. A at 3.) From Plaintiff's perspective, the incident on

10   January 29, 2006 appears to be the most critical.

11       The parties' accounts of this incident are similar but not identical. (*See* Plaintiff's AMSJ,

12   Ex. 12908 and Sepulveda Decl., Ex. A at 6-7.) Tamara Carter ("T. Carter") – Plaintiff's wife,

13   who also is a correctional officer at the main jail facility – was on leave on Monday, January 23,

14   2006, for a possible workers' compensation injury. (Plaintiff's AMSJ, Ex. 1300.) She returned

15   with full medical clearance on January 25, 2006. (*Id.*) However, she left work on January 28,

16   2006, after feeling ill. (*Id.*) This possible illness was not connected to any workers'

17   compensation injury. (*Id.*) On January 29, 2006, Plaintiff and his wife attended a meeting in the

18   squad room. (Plaintiff's AMSJ, Ex. 12908 and Sepulveda Decl., Ex. A at 6-7.)  Sergeant Hollen

19   read the names of the officers who were scheduled to work that evening. (*Id.*) Realizing that her

20   name was not on the schedule, T. Carter asked Sergeant Hollen why. (*Id.*) Sergeant Hollen said

21   that it was unclear whether T. Carter had the proper medical clearance to return to work.[7] (*Id.*)

22   After this conversation, T. Carter left the room. (*Id.*)

23       It is at this point that the parties' accounts begin to differ. Both parties agree that an

24   argument arose between Plaintiff and Sergeants Hollen, Case, Noy, and Gonzalez. (Plaintiff's

25   AMSJ, Ex. 12908 and Sepulveda Decl., Ex. A at 6-7.)  Plaintiff alleges that the sergeants

26

27       [7] It later was determined that T. Carter did have the proper medical clearance to return to

28   work. She was paid for the two days of work that she missed as a result of the SCCDC's mistake regarding her clearance. (Plaintiff's AMSJ, Ex. 1300-A.)

4

1  surrounded him in a threatening manner and began to yell at him; Defendants allege that Plaintiff

2  instigated an argument and acted in a threatening manner. (*Id.*)   Before the meeting began,

3  Plaintiff's supervising sergeants anticipated an altercation with Plaintiff and his wife, and the

4  sergeants decided to record the meeting.   (Sepulveda Decl., Ex. A at 6-7.)  The entire altercation

5  was recorded without Plaintiff's knowledge.  (*Id.*)

6       As a result of an investigation that was initiated on February 2, 2006, Plaintiff was

7  terminated effective March 28, 2007. (*Id* at 12.)

8  **C.    Procedural history**

9       Plaintiff has filed a number of claims and lawsuits against Santa Clara County ("the

10  County") and several of its employees since 2003.  On August 13, 2003, Plaintiff filed a

11  complaint against the County with the California Department of Fair Employment and Housing

12  ("DFEH") and the United States Equal Employment Opportunity Commission ("EEOC"),

13  alleging discrimination on the basis of race, disability, and marital status.  (Def.'s RJN, Ex. 2.)

14  At Plaintiff's request, the DFEH issued a right-to-sue notice on February 6, 2004, providing

15  Plaintiff with one year within which to file suit.  (*Id.*, Ex. 3.)  The EEOC issued a right-to-sue

16  notice on March 25, 2004, providing Plaintiff with ninety days within which to file suit.  (*Id.*, Ex.

17  4.)  On April 5, 2004, Plaintiff filed suit in the Santa Clara Superior Court, Case No. 1-04-CV-

18  017278, alleging employment discrimination.  (Plaintiff's AMSJ, Ex. 4137.)

19       On February 4, 2005, Plaintiff presented a government tort claim to the County, alleging

20  discrimination on the basis of race and disability and retaliation for filing a workers'

21  compensation claim. (Def.'s RJN, Ex. 5.)  On March 14, 2005, the County rejected the claim

22  and gave notice of Plaintiff's right to sue within six months of the letter.  (*Id.*, Ex. 6.)  On

23  February 24, 2005, Plaintiff filed a second suit in the Santa Clara Superior Court, Case No. 1-05-

24  CV-035156.  This case was identical to Case No. 1-04-CV-017278, except that Plaintiff added

25  more defendants and alleged additional facts with respect to events that occurred between April

26  5, 2004 and February 4, 2005.

27       On March 3, 2005, Plaintiff filed a second complaint with the DFEH, claiming that he

28  had been denied family medical leave.  (Def.'s RJN, Ex. 7.)  On March 24, 2005, the DFEH

1    issued a right-to-sue notice, providing Plaintiff with one year within which to file suit.  (*Id.*, Ex.

2    8.)  On May 11, 2006, Plaintiff filed a charge of discrimination with the EEOC, alleging that the

3    County had failed to accommodate his disability and had retaliated against him for filing

4    previous complaints.  (*Id.*, Ex. 9.)  On May 16, 2006, the EEOC referred the complaint to the

5    DFEH.  (*Id.*, Ex. 11.)  On June 21, 2006, the EEOC issued a right-to-sue notice, providing

6    Plaintiff with ninety days within which to file suit.  (*Id.*, Ex. 10.)  Plaintiff presented a second

7    government tort claim to the County on July 16, 2006, alleging retaliation for reporting the mold

8    growth.  (*Id.*, Ex. 12.)  On August 3, 2006, the County responded, denying part of the claim as

9    time-barred, (*Id.*, Ex. 14), and rejecting the remainder of the claim.  (*Id.*, Ex. 15.)  Plaintiff was

10   informed that he had six months within which to file suit.  (*Id.*)

11        On September 18, 2006, Plaintiff filed a third lawsuit in the Santa Clara Superior Court,

12   Case No. 1-06-CV-071337.  This action contained substantially the same allegations as the other

13   lawsuits, once again alleging more recent events.  (Plaintiff's AMSJ, Ex. 4137.)  This lawsuit

14   was filed more than one year after Plaintiff received his right-to-sue notice from the DFEH with

15   respect to his family medical leave claim but within the other relevant time periods.  By

16   stipulation, Plaintiff dismissed all of his state-court lawsuits except Case No. 1-06-CV-071337,

17   with the filing date of that action related back to April 5, 2004.  (*Id.*)

18        On April 18, 2007, Plaintiff filed another claim of discrimination with the DFEH,

19   alleging wrongful retaliation and denial of reasonable accommodation for his disability.  (Def.'s

20   RJN, Ex. 16.)  On May 3, 2007, the DFEH issued a right-to-sue notice, providing Plaintiff with

21   one year within which to sue.  (*Id.*, Ex. 17.)  On June 26, 2007, Plaintiff presented a third

22   government tort claim to the County, alleging (1) termination in violation of public policy, (2)

23   retaliation, (3) discrimination, (4) violation of Cal. Labor Code § 1102.5, and (5) breach of the

24   implied covenant of good faith and fair dealing.  (*Id.*, Ex. 18.)  On July 6, 2007, the County

25   denied part of the claim as time-barred and rejected the remainder on the merits.  (*Id.*, Exhs. 19,

26   20.)  Plaintiff again was informed that he had six months within which to file a claim.  (*Id.*)

27        On March 4, 2009, Plaintiff received a letter from the EEOC regarding EEOC Charge No.

28   555-2009-00390, a charge that involved a "recent written correspondence or intake questionnaire

in which [he] alleged employment discrimination". (Plaintiff's Opp'n, Ex. 3409.) The EEOC acknowledged receipt of Plaintiff's charge of alleged discrimination in violation of the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). The EEOC stated that it would refer the charge to the DFEH if Plaintiff responded within thirty days. (*Id.*) It is unclear from the record what Defendants' alleged conduct was, when Plaintiff filed the charge, whether Plaintiff responded to the EEOC's March 4, 2009 letter, whether the EEOC referred the charge to the DFEH, or whether the EEOC issued a right-to-sue notice.

Plaintiff did not file another lawsuit until the commencement of the instant federal action on June 1, 2009. Between September 18, 2006 and May 20, 2009, Case No. 1-06-CV-071337 was proceeding in the Superior Court. On May 20, 2009, the Superior Court dismissed that action. (Declaration of Mark F. Bernal in Support of Def.'s Opp'n, Ex. A.) On July 28, 2009, the Superior Court heard a motion to vacate its order of dismissal. (*Id.*, Ex. C.) The Superior Court apparently vacated its order, as it scheduled a case management conference for October 13, 2009. (*Id.*, Ex. D.) However, Plaintiff did not appear at that case management conference or a show cause hearing that subsequently was scheduled for December 10, 2009. (*Id.*, Exhs. E, F.) As a result, the Superior Court again dismissed the action. (*Id.*, Ex. F.)

## II.  LEGAL STANDARDS

### A.     Motion for judgment on the pleadings

The standard applicable to a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is essentially the same as that applicable to a motion to dismiss under Fed. R. Civ. P. 12(b), though the former may be made by either party. *Qwest Commc'ns Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002). In reviewing a motion for judgment on the pleadings, the Court views the facts presented in the light most favorable to the non-moving party, accepting as true all the allegations in the complaint and treating as false those allegations in the answer that contradict the plaintiff's allegations. *Id.* A complaint may be dismissed for failure to state a claim upon which relief may be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). On

7

a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)*; N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

**B.     Motion for summary judgment**

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson*, 477 U.S. 242, 248-49; *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991). The standard applied to a motion seeking partial summary judgment is identical to the standard applied to a motion seeking summary judgment of the entire case. *See Urantia Foundation v. Maaherra*, 895 F.Supp. 1335, 1335 (D. Ariz. 1995).

On a motion for summary judgment, the Court will not consider new argument or evidence presented in a reply brief unless the non-moving party has had an opportunity to respond. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996); *Ferguson v. City of Phoenix*, 931 F.Supp. 688, 696 (D. Ariz. 1996). It is not this Court's task to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal citations and quotations omitted). The non-moving party has the responsibility to identify with reasonable particularity the evidence which precludes summary judgment. *See id.*

//

Case No. C 09-2413
ORDER (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ETC.
(JFEX1)

1

### III.  DISCUSSION

2

**A.     Employment discrimination**

3

**1.       FEHA statute of limitations**

4

FEHA generally proscribes employment discrimination based on "race, religious creed,

5

color, national origin, ancestry, physical disability, mental disability, medical condition, marital

6

status", and other reasons.  Cal. Gov. Code § 12940.  Defendants argue that the instant suit was

7

not filed within the limitations period.  "The FEHA contains specific time limitations related to

8

the remedies provid[ing] [that:]

9

> a verified complaint must be filed with the Department of Fair Employment and Housing
> within one year of the unlawful practice ( Gov. Code, § 12960);  the department must
> serve the employer with the complaint within 45 days of filing or at the time of initial
> contact ( Gov. Code, § 12962); if an accusation is not issued within 150 days after filing
> of the complaint, or if the department earlier determines that no accusation will issue, the
> department shall so notify the charging party in writing, informing that party that he may
> bring a civil action under the act against the party named in the complaint within one year
> from the date of that notice. ( Gov. Code, § 12965.)"

10

11

12

13

*Murray v. Oceanside Unified Sch. Dist.*, 79 Cal. App. 4th 1338, 1360 (Cal. App. 4th Dist. 2000).

14

A court "cannot waive the jurisdictional requirement that mandates that individuals must first file

15

a complaint with the DFEH before bringing a civil suit under the FEHA." *Alberti v. City &*

16

*County of San Francisco Sheriff's Dep't*, 32 F. Supp. 2d 1164, 1174 (N.D. Cal. 1998).

17

Each of Plaintiff's FEHA complaints resulted in a right-to-sue notice issuing more than

18

one year before June 1, 2009.  Thus, Plaintiff's FEHA claims appear to be untimely.  To the

19

extent that Defendants may have violated FEHA after Plaintiff was terminated on March 28,

20

2007, Plaintiff has not shown that he filed a complaint with the DFEH for such conduct.

21

Accordingly, Plaintiff's FEHA claims are time-barred.  However, as discussed below, Plaintiff's

22

papers in opposition to Defendants' motion make reference to facts that conceivably could cure

23

this defect.  Accordingly, Plaintiff will be granted leave to amend his FEHA claim in order to

24

allege the filing of other DFEH complaints that resulted in the issuance of a right-to-sue notice

25

within one year of June 1, 2009.

26

**2.       Potential ADA and Title VII claims**

27

Though Plaintiff discusses only FEHA specifically, he is not necessarily limited to the

28

9

specific legal theories he has invoked in the complaint.  Plaintiff generally alleges discrimination

based on his race and disability, (Complaint at 4), and he may be able to allege actionable

discrimination under other statutory schemes.  Plaintiff appears to have filed EEOC Charge No.

555-2009-00390 with the EEOC in early 2009.  (*See* Plaintiff's Opp'n, Ex. 3409.)  In that charge,

Plaintiff alleged violations of the ADA and Title VII.  (*Id.*)  Under either the ADA or Title VII, a

complainant has 180 days from the date of the violation within which to file a complaint with the

EEOC.  *See Pickern v. Holiday Quality Foods*, 293 F.3d 1133, 1137 n.2 (9th Cir. 2002) (noting

that pursuant to 42 U.S.C. §§ 12117(a) and 2000e-5(e)(1), under the ADA, as under Title VII,

charges must be filed within 180 or 300 days after an alleged unlawful employment practice has

occurred).  A complainant has 300 days from the date of the violation within which to file a

complaint with a state agency.  *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 823 (9th Cir.

2001).

        The current record omits a number of important details about EEOC Charge No. 555-

2009-00390, including the exact date it was filed, whether the allegations are the same as those in

the instant suit, whether the EEOC referred the complaint to the DFEH, and whether the EEOC

issued a right-to-sue notice before June 1, 2009.  Because there are several disputed issues of

material fact, summary judgment would be inappropriate with respect to a potential claim under

the ADA or Title VII.  Nonetheless, the claim is defective under Rule 12 because it alleges

insufficient facts to state a claim upon which relief may be granted.

        Although the claim is subject to dismissal, leave to amend will be granted to allow

Plaintiff to provide more factual detail.  Among other things, Plaintiff should allege the basis of

EEOC Charge No. 555-2009-00390, when that conduct occurred, when the charge was filed,

whether the EEOC issued a right-to-sue notice, and whether he has filed any other complaints

with the EEOC or the DFEH.

**B.      Tort claims**

        Plaintiff alleges that Defendants are liable for several common-law torts, including

negligence, intentional infliction of emotional distress, and negligent infliction of emotional

distress.  Plaintiff also alleges that he was terminated in violation of public policy.  *See Miklosy*

Case No. C 09-2413
ORDER (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ETC.
(JFEX1)

1   *v. Regents of University of California*, 44 Cal. 4th 876, 900 (Cal. 2008) (noting that "[i]f an
2   employer terminates an employment relationship for a reason that contravenes some fundamental
3   public policy, then the employer breaches a general duty imposed by law upon all employers and
4   the employee's remedy therefore sounds in tort.").

5         "The [Government] Tort Claims Act ([Cal. Gov. Code] § 810 *et seq*.) describes the
6   specific steps which must be taken before a civil action for money or damages may be brought
7   against a public entity." *Addison v. State*, 21 Cal. 3d 313, 316 (Cal. 1978). "First, plaintiff must
8   present a claim (§§ 905, 905.2, 915) to the appropriate agency within 100 days after accrual of
9   the cause of action (§ 911.2). Thereafter, the agency has 45 days within which to accept or reject
10  the claim (§ 911.6). If the claim is rejected in writing (§ 913), plaintiff has six months thereafter
11  within which to bring a court action (§ 945.6)." *Id.*

12        As discussed above, Plaintiff presented several government tort claims to the County,
13  which rejected all of the claims that were timely, allowing Plaintiff to file suit within six months
14  thereafter. In fact, Plaintiff did initiate lawsuits in state court within six months after receiving
15  most of the rejections. However, the instant federal lawsuit was not filed until well after the six-
16  month window had closed. Plaintiff's most recent government tort claim was rejected on July 6,
17  2007, almost two years before the instant action was filed. In addition, Plaintiff presented several
18  of his government tort claims to the County more than 100 days after the action accrued, and the
19  County declined to act, though it informed Plaintiff that he could seek leave to present a late
20  claim. (*See, e.g.,* Def.'s RJN, Ex. 19.) Plaintiff does not allege that he sought leave to present a
21  late claim. Accordingly, each of these tort claims appears to be time-barred. Because it is
22  possible that Plaintiff could allege additional facts showing that his claims are not time-barred,
23  leave to amend will be granted.

24  **C.      Plaintiff's Section 1983 claims**

25        "While 42 U.S.C. § 1983 does not specify a statute of limitations, the Supreme Court has
26  instructed federal courts addressing [Section] 1983 personal injury claims to follow the statute of
27  limitations of the state in which the challenged action occurred." *Equity Lifestyle Props., Inc. v.*
28  *County of San Luis Obispo*, 548 F.3d 1184, 1193 n.15 (9th Cir. 2008) (citing *Wilson v. Garcia*,

11

1   471 U.S. 261, 276 (1985), superseded on other grounds, as recognized in *Jones v. R. R.*

2   *Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004)).  In California, the statute of limitations for

3   personal injury claims is set forth in Cal. Code Civ. P. 335.1, which provides a two-year statute

4   of limitations for  "[a]n action for assault, battery, or injury to, or for the death of, an individual

5   caused by the wrongful act or neglect of another."

6         On June 26, 2007, Plaintiff presented the County with tort claims for:  (1) termination in

7   violation of public policy, (2) retaliation, (3) discrimination, (4) violation of Cal. Labor Code §

8   1102.5, and (5) breach of the implied covenant of good faith and fair dealing.  (Def.'s RJN, Ex.

9   18.)  It is undisputed that Plaintiff was terminated effective March 28, 2007.  (Sepulveda Decl.,

10   Ex. A at 12.)   Thus, the complained-of conduct does not appear to have occurred within two

11   years of June 1, 2009.

12         Plaintiff, in his moving and responding papers, alleges other violations occurring within

13   the limitations period.  He claims that his former attorneys, attorneys for the Santa Clara County

14   Correctional Peace Officers' Association, and Santa Clara County judges conspired to sabotage

15   his claims.  (*See, e.g.,* Plaintiff's AMSJ at 29-30.)  Plaintiff's only factual allegation in support of

16   any type of conspiracy is that one of the County's lawyers and Judge Loftus, the Superior Court

17   judge presiding over Case No. 1-09-CV-071337, both are alumni of the law firm "Hodges,

18   Fenton, Jones, & Appel" (apparently abbreviated as "HFJA").  Plaintiff alleges that during a

19   settlement conference with Judge Pearce, the County's attorney began to  "cheer" the initials

20   "HFJA" repeatedly before Judge Pearce asked him to "calm down".  (*Id*. at 30.)  While this

21   certainly would constitute unusual behavior on the part of an attorney, it is not evidence that

22   Defendants conspired with Judge Pearce or with Judge Loftus, who was not even in the room.

23   Nor is it clear from the record when this alleged event transpired.

24         Plaintiff makes several other allegations of a conspiracy, each of which lacks any specific

25   factual basis.  Plaintiff was arrested by the Manteca Police Department on April 24, 2007.

26   (Plaintiff's AMSJ, Ex. 1720.)  However, Plaintiff does not allege any facts connecting this arrest

27   to a conspiracy involving Defendants.  Plaintiff alleges that his disability benefits were

28   terminated on December 10, 2007.  However, Plaintiff does not allege how this action was

1  discriminatory or how Defendants were connected with the decision to terminate his benefits.

2  Plaintiff also alleges that others have been exposed to hazardous materials at the main jail facility

3  since March 28, 2007.  However, Plaintiff does not have standing to assert claims for the injuries

4  of others.  He has not alleged personal exposure to hazardous materials since his termination on

5  March 28, 2007.

6      Plaintiff also alleges that Defendants are continuing to defame him.  On April 19, 2007,

7  T. Carter arrived at the main jail facility to discover that "wanted" posters depicting Plaintiff had

8  been placed around the facility.  (Plaintiff's AMSJ, Ex. 1360 (T. Carter's report of the incident,

9  describing how her "husband['s] photo [was] plastered all over the West Gate lobby").)  Plaintiff

10  alleges that Defendants told others that he was violent and had made threats against persons at

11  the facility.  However, Defendants' "failure to correct" the alleged defamation does not continue

12  the tort beyond April 19, 2007, a date outside the two-year limitations period.

13      Finally, Plaintiff filed EEOC Charge No. 555-2009-00390, presumably at some point in

14  2009, given that the file number includes "2009".  In that charge, Plaintiff apparently alleged

15  some type of ADA and Title VII violation.  However, the conduct that underlies that charge is

16  not clear.  Plaintiff has alleged only two wrongful acts that could have occurred within two years

17  of June 1, 2009:  the termination of his disability benefits in December 2007 and the conspiracy

18  to sabotage his claims that may have continued into 2009.  As discussed above, Plaintiff has

19  failed to identify evidence that links Defendants with either of these claims.

20      It is conceivable that Plaintiff could allege that EEOC Charge No. 555-2009-00390 is

21  predicated on some wrongful conduct  – not otherwise alleged within the complaint or his

22  moving papers – that occurred within two years of June 1, 2009.  Accordingly, the Section 1983

23  claim will be dismissed with leave to amend to allow Plaintiff to provide more factual detail

24  regarding any alleged misconduct occurring within two years of June 1, 2009, including an

25  explanation of how the Defendants were connected to such misconduct.

26  **D.   POBRA claim**

27      California courts have determined that claims alleging POBRA violations must conform

28  to California's Government Tort Claims Act, Cal. Gov. Code, § 900 *et seq.  Lozada v. City and*

13

1   *County of San Francisco*, 145 Cal. App. 4th 1139, 1157 (Cal. App. 1st Dist. 2006).  The

2   Government Tort Claims Act "establishes certain conditions precedent to the filing of a lawsuit

3   against a public entity. As relevant here, a plaintiff must timely file a claim for money or

4   damages with the public entity. (§ 911.2.) The failure to do so bars the plaintiff from bringing

5   suit against that entity. (§ 945.4.)"  *State of California v. Superior Court* (*Bodde*), 32 Cal. 4th

6   1234, 1237 (2004).  Accordingly, the Government Tort Claims Act requires Plaintiff to present

7   his POBRA claim to the County in some manner before filing suit.  Plaintiff does not allege that

8   he has done this.  Accordingly, unless Plaintiff can cure this deficiency by amendment, this claim

9   is barred.

10   **E.    Section 1102.5 claim**

11          Cal. Labor Code § 1102.5(b) provides that "[a]n employer may not retaliate against an

12   employee for disclosing information to a government or law enforcement agency, where the

13   employee has reasonable cause to believe that the information discloses a violation of state or

14   federal statute, or a violation or noncompliance with a state or federal rule or regulation."  "The

15   California Supreme Court has recently held that a litigant seeking damages under § 1102.5 is

16   required to exhaust administrative remedies before the Labor Commissioner prior to bringing

17   suit."  *Neveau v. City of Fresno*, 392 F. Supp. 2d 1159, 1180 (E.D. Cal. 2005) (citing *Campbell*

18   *v. Regents of the Univ. of Cal.*, 35 Cal. 4th 311, 333-4 (2005)).

19          Cal. Labor Code § 98.7 provides that "[a]ny person who believes that he or she has been

20   discharged or otherwise discriminated against in violation of any law under the jurisdiction of the

21   Labor Commissioner may file a complaint with the division within six months after the

22   occurrence of the violation."  In *Neveau*, the court concluded that Section 1102.5 claims are

23   "under the jurisdiction of the Labor Commissioner" and, following *Campbell*, concluded that the

24   plaintiff's claims were barred because he did not exhaust "available administrative remedies,

25   including bringing a complaint before the Labor Commissioner, before bringing suit."  392 F.

26   Supp. 2d at 1180.  Plaintiff has not alleged that he has exhausted the remedies with the Labor

27   Commissioner before filing the instant suit.

28          As set forth above, Plaintiff did present his Section 1102.5 claim to the County as a

1   government tort claim.  (Def.'s RJN, Ex. 18.)  However, other district courts within California

2   have concluded that presenting a claim under the Government Tort Claims Act does not exhaust

3   the administrative remedy of filing a complaint with the Labor Commissioner.  *See Creighton v.*

4   *City of Livingston*, 628 F. Supp. 2d 1199, 1222 (E.D. Cal. 2009).  Accordingly, this claim is

5   barred.  Leave to amend will be granted to allow Plaintiff to allege that he presented a timely

6   Section 1102.5 claim to the Labor Commissioner.

7   **F.      Breach of the implied covenant of good faith and fair dealing**

8           Plaintiff alleges that his termination violated the implied covenant of good faith and fair

9   dealing.  Defendants' motion does not address this claim.  "There is implied in every contract a

10  covenant by each party not to do anything which will deprive the other parties thereto of the

11  benefits of the contract."  *Harm v. Frasher*, 181 Cal.App.2d 405, 417 (Cal. Ct. App. 1960).  A

12  "breach of a specific provision of the contract is not a necessary prerequisite" to establishing a

13  breach of the implied covenant of good faith and fair dealing.  *Carma Developers (Cal.), Inc. v.*

14  *Marathon Dev. Cal., Inc.,* 2 Cal.4th 342, 373(1992).  However, "[t]he implied covenant will not

15  apply where no express term exists on which to hinge an implied duty, and where there has been

16  compliance with the contract's express terms."  *Berger v. Home Depot U.S.A.*, *Inc.*, 476 F. Supp.

17  2d 1174, 1177 (C.D. Cal. 2007).

18          The applicable statute of limitations is four years.  *See* Cal. Civ. Code § 337 (providing a

19  four year statute of limitations for claims for breach of a written contract); *Comunale v. Traders*

20  *& General Ins. Co.*, 50 Cal. 2d 654, 662 (Cal. 1958) (concluding that "[t]he promise which the

21  law implies as an element of the contract is as much a part of the instrument as if it were written

22  out").  Plaintiff was terminated on March 28, 2007 (Sepulveda Decl., Ex. A at 12); thus his claim

23  was brought within the limitations period.

24          Nonetheless, Plaintiff has not demonstrated the absence of a triable issue of material fact.

25  Plaintiff has not submitted a copy of his written employment contract.  Plaintiff presents

26  evidence that his suspension and ultimate termination occurred near the time of his report of

27  mold in the M-3 C dorm, which suggests that his suspension and eventual termination *could* have

28  been the result of this report.  However, Plaintiff's evidence also shows that the disciplinary

15

1   measures imposed on him occurred shortly after an incident in which the SCCDC alleges that

2   Plaintiff inappropriately confronted and chastised his supervisors.  Plaintiff's evidence also

3   indicates that the decision to close the M-3 C dorm for repairs may have been made well in

4   advance of his January 6, 2006 report of mold growth.  (*See* Plaintiff's AMSJ, Ex. 11006

5   (indicating that the decision to close the M-3 C dorm on January 10, 2006 was made as early as

6   May 27, 2005).)  These facts suggest that Defendants had no reason to retaliate for the mold

7   report because the SCCDC already intended to close the dorm for repairs.  From the facts

8   alleged, it is not clear why Plaintiff was disciplined and later terminated.  Accordingly, Plaintiff

9   is not entitled to summary judgment.  In amending his complaint to address the other concerns

10  discussed within this order, Plaintiff also may wish to provide additional detail with respect to

11  this claim.

12                            **III.  DISPOSITION**

13          Plaintiff's motion for summary judgment is denied.  Defendants' motion for judgment on

14  the pleadings is granted, with leave to amend.[8]  Any amended pleading shall be filled within

15  thirty (30) days of this order.

16

17  **IT IS SO ORDERED**

18

19  DATED:  7/6/2010          _____

20                            JEREMY FOGEL
                              United States District Judge

21

22

23

24

25

26

27

28
    _____
        [8]  Defendants' alternative motion for summary judgment is terminated as moot.

Case No. C 09-2413
ORDER (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ETC.
(JFEX1)